No. 17,363

Chester E. Eccles, Jr., as Administrator, etc. *v.* Alma
Gabriel Sylvester and William Joseph Gabriel,
Trustees, etc.

(281 P. [2d] 1006)

Decided March 21, 1955. Rehearing denied April 25, 1955.

Mr. Isaac Mellman, Mr. Gerald N. Mellman, for plaintiff in error.

Mr. Clifford W. Mills, Mr. Abe L. Hoffman, for defendants in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

In the trial court defendants in error were plaintiffs and Chester E. Eccles was defendant. We will refer to the parties as they there appeared, or by name.

There is nothing in the record of the trial court here submitted, or in our records, to indicate a substitution of the administrator of the estate of Chester E. Eccles. We assume that after the rendition of the judgment, Chester E. Eccles departed this life; that his son Chester E. Eicles, Jr., was substituted as administrator of the estate of his father, and counsel for the respective parties have so considered the record.

The Ideal Finance Company was a corporation, and at the time the instant action was commenced, its charter had expired. John H. Gabriel, a Denver lawyer, was the principal stockholder, and from the record we note that it was "his corporation." Defendant Chester E. Eccles, a director and also manager of the corporation, operated the affairs of the corporation. Chester E. Eccles, Jr., a son of the manager, was also employed by the company, at first performing services as janitor and later in other capacities assisting in the conduct of corporate affairs. During the life time of Mr. Gabriel, who died August 5, 1948, the son, with the knowledge and approval of Mr. Gabriel, operated an insurance business at the place of business where Ideal Finance Company carried on its operations. William J. Gabriel and Alma Gabriel Sylves-

ter became owners of John H. Gabriel's stock in the company by virtue of the latter's last will and testament. In October, 1948, at a stockholders meeting, William J. Gabriel was elected President of the company and he and Alma Gabriel Sylvester and Chester E. Eccles were elected directors of the company. This board of directors fixed the salaries of defendant and his son as herein noted. The instant action was instituted by the two last named persons as trustees for the liquidation of the Ideal Finance Company, after its corporate existence expired.

Plaintiffs' complaint embraced four claims against defendant. Plaintiffs alleged they were a majority of the trustees of the Ideal Finance Corporation, a Colorado corporation, whose charter had expired; that the action was brought for and on behalf of the stockholders and creditors of said Ideal Finance Company, herein referred to as the "Company."

In the first claim plaintiffs alleged defendant executed his promissory note in favor of the company for $7,000 on May 17, 1947; that defendant was one of the present trustees of said company; that the note was due one year after its date, and that no part thereof, save $1,500 had been paid. On this claim plaintiffs prayed judgment for $5,500 and interest from May 17, 1948.

In the second claim it was alleged defendant was the general manager of the company, and after the demise of John H. Gabriel on August 5, 1948, defendant continued to operate the Ideal Finance Company "without consultation in any way with plaintiffs." That Chester E. Eccles, Jr., was the assistant secretary of said company, and that he, without the knowledge or consent of plaintiffs, or of the directors of said company, at the office of the Ideal Finance Company, operated "a business of lending money on automobiles for himself and for others than the company;" that said Chester E. Eccles, Jr., took "profits from his private operation of a business which should have belonged to the Ideal Finance Com-

pany." That defendant well knowing of the operations of said Chester E. Eccles, Jr., "wrongfully paid out of the funds of the Ideal Finance Company the sum of One Hundred Thirty Dollars * * * per month from the 5th day of August, 1948, to and including the month of June, 1951" to Chester E. Eccles, Jr. This sum represented the son's monthly salary as assistant secretary. Under this claim, plaintiffs prayed judgment for an accounting of the funds paid to Chester E. Eccles, Jr., and that defendant be required to compensate the company for "a reasonable value of the rent which plaintiff allowed to Chester E. Eccles, Jr., while Chester E. Eccles, Jr., was operating a business in competition with the Ideal Finance Company."

In the Third Claim, plaintiffs alleged that after the 5th day of August, 1948, and until the month of June, 1951, defendant, a former director, secretary and treasurer of the company, while so acting, conducted an automobile loan business on his own behalf in competition with the Ideal Finance Company, and that during said period he paid to himself out of company funds the sum of $285 per month as his salary from the company, and that during said period he occupied the quarters of the company without paying rent therefor. Under this third claim, plaintiffs prayed judgment for "an accounting of any profits made by defendant herein during the period from the 5th day of August, 1948, up to and including the month of June, 1951, or in lieu thereof that defendant be required to reimburse the Ideal Finance Company for all salary paid unto himself during said period of time, also for the space belonging to the Ideal Finance Company and occupied by the defendant herein."

The Fourth Claim prayed judgment against defendant in the sum of $1,253.50 for moneys allegedly collected by defendant on behalf of the company and not paid over or delivered to the company.

By answer, defendant admitted the execution of the note sued upon and alleged that it was executed in pay-

ment for stock of the company to be later issued to be paid for out of the profits of the company; that no profits were realized, hence no stock was issued. Defendant, in answer to the other claims, admitted he received a salary of $285 per month from the company as manager thereof, but denied all other allegations in said claims.

Trial was to a jury. The trial court directed a verdict in favor of plaintiffs on the first claim, and submitted the other issues to the jury, which returned a verdict on the second claim in favor of plaintiffs in the sum of $2,660; on the third claim in the sum of $1,200; and on the fourth claim in the sum of $906.50. Judgment was entered on the verdicts and the administrator of defendant's estate brings the cause here by writ of error.

We find no competent evidence received or tendered to sustain defendant's contention that the note sued upon in claim one was conditionally delivered, or that it was to be paid out of profits of the company.

An offer of proof was made by defendant, and rejected by the trial court whereby it was sought to show what understanding or agreement existed between defendant and Mr. Gabriel regarding the payment of the note in question. The best that can be spelled out of the pleading and the proffered evidence is that this note was to be paid out of profits of the company and corporate stock was to be issued to defendant therefor. The trial court properly rejected the offer of proof. Nothing was tendered to show that any corporate action was had, and it is fundamental that a corporation may act only in matters of this kind by its board of directors, and the action of its board is limited by statutory enactments and matters of public policy. Acts of individual directors are not corporate acts unless performed in the manner prescribed by law. We think our decision in *Faris v. Beck*, 74 Colo. 480, 222 Pac. 652 is controlling in the instant case. Here, the plaintiffs are suing in a capacity much like that of a receiver in order to realize upon assets of the corporation, whose charter has expired. In the Faris

case, supra, we said: "* * * if the defendant was a subscriber to the stock, the court was right, we think, in its opinion that the agreement that the stock should be paid for out of dividends was against public policy." Further, Section 25, chapter 41, '35 C.S.A. provides: "No corporation shall issue stock or bonds except for labor done, services performed or money or property actually received."

We, therefore, must conclude that the rejected evidence offered by defendant was properly excluded. The action of the trial court in directing a verdict in favor of plaintiffs on the first claim was correct.

While defendant denied, by his answer, that he had failed to account for the collections mentioned in claim four, there is competent evidence in the record upon which the jury could, and did, find the issues on this claim in favor of plaintiffs.

There being competent evidence to sustain the verdict of the jury on claim four, the judgment based on that verdict must be affirmed.

We now consider claims two and three. Counsel for defendant moved for a directed verdict in favor of defendant on all claims. This motion was denied. By the instructions given, the jury was authorized to award plaintiffs on claim two the amount of salary paid to Chet Eccles, Jr., together with a "reasonable rental and a reasonable value for the use of the utilities" in the office of the company, and on claim three the salary which Chester E. Eccles, Jr., drew.

As nearly as we can ascertain from this voluminous record, Chester E. Eccles, Jr., C. E. Eccles, Sr., and Robert G. Eccles were the partners, doing business as Chet Eccles Co. During at least part of the time mentioned, this partnership was doing business in Lakewood, Jefferson County, Colo. There is nothing in the record before us to indicate the reasonable rental demanded under claims two and three. Neither is there any evidence as to the reasonable value of the utilities. An award in

favor of plaintiffs on these items necessarily had to rest on speculation. All we have before us is that the Chet Eccles Co. conducted a business for at least part of the time at 865 Lincoln Street, Denver, which was also the office of the Ideal Finance Company. It is admitted that Chester E. Eccles, Sr., and his son, Chester E. Eccles, Jr., were performing services for the Ideal Finance Company during this period.

In 19 C.J.S. § 785, page 160, we find:

"When acting in good faith, a director or officer is not precluded from engaging in distinct enterprises of the same general class of business as the corporation is engaged in; but he may not wrongfully use the corporation's resources therein, nor may he enter into an opposition business of such a nature as to cripple or injure the corporation. If he does enter into such business, equity will impress a trust for the benefit of the corporation on the profits arising therefrom."

We announced the same doctrine in *Carper v. Frost Oil Co.* 72 Colo. 345, 211 Pac. 370.

■■ No attempt was made to prove that either Mr. Eccles, Sr., or his son, were parties to an agreement with the company not to engage in other business while on the company's payroll. Neither is it made to appear in the record before us that business which the son did, either in his name or in the name of Chet Eccles Company, involved transactions which otherwise would have gone to the Ideal Finance Company, or which it was in a position to handle. It is manifest that Mr. Gabriel permitted the son to engage in a business on his own account with his headquarters at the office of the Ideal Finance Company.

That Chester E. Eccles and his son rendered services for the Ideal Finance Company during the period between December 1, 1949, and June 30, 1951, is not denied. It is also admitted that they were to be compensated as above stated. There is no evidence in this record as to the amount of damage, if any, suffered by the

Ideal Finance Company as a result of the alleged competition, neither is there evidence concerning the profit, if any, received by defendant as a result of the alleged competition. This being so, there could be no recovery on claims two and three. Where there is no reasonable basis or standard for determining the amount of damages chargeable to defendant's conduct, there can be no recovery.

Nowhere does it appear that the business conducted by Chet Eccles, Jr., and his associates would have gone to the Ideal Finance Company, and no attempt was made to show what profit, if any, was made by defendant, or his son, through these operations. Having failed in this regard counsel for plaintiffs fell back upon the theory that the salary paid from company funds was the measure of damages. The salaries paid did not constitute the measure of damages. We, therefore, conclude that the trial court erred in denying the motion for a directed verdict on claims two and three interposed by counsel for defendant.

The judgments entered on claims one and four are affirmed and the cause is remanded to the trial court with directions to vacate the judgments based on claims two and three.